Thomas A. Saenz (SBN 159430)
Ernest I. Herrera (SBN 335032)
**MEXICAN AMERICAN LEGAL**
**DEFENSE AND EDUCATIONAL FUND**
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone:  (213) 629-2512
Facsimile:   (213) 629-0266
Email:  tsaenz@maldef.org
Email:  eherrera@maldef.org

Ossai Miazad *(admitted pro hac vice)*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW, Suite 1200B
Washington, DC 20005
Telephone:  (202) 847-4400
Facsimile:   (202) 847-4410
Email:  om@outtengolden.com

Chauniqua D. Young *(admitted pro hac vice)*
Rebecca L. Pattiz *(admitted pro hac vice)*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:  (212) 245-1000
Facsimile:   (646) 509-2060
Email:  cyoung@outtengolden.com
Email:  rpattiz@outtengolden.com

*Attorneys for Plaintiffs Iliana Perez, Josue Jimenez Magaña,*
*and Emiliano Galicia Felix and The Proposed Class*

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ILIANA PEREZ, JOSUE JIMENEZ MAGAÑA, and EMILIANO GALICIA FELIX, individuals, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DISCOVER BANK, a Delaware corporation, <br><br> Defendant. | Case No. 3:20-cv-06896-SI <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL** <br><br> Hearing Date: February 23, 2024 <br> Hearing Time: 10:00 AM <br><br> Honorable Susan Illston <br> Courtroom: 1 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on February 23, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 – 17th Floor of this Court's San Francisco Courthouse, located at 450 Golden Gate Avenue, California, Plaintiffs Iliana Perez, Josue Jimenez Magaña, and Emiliano Galicia Felix (together, "Plaintiffs"), will, and hereby do, move this Court to:

a.      Preliminarily certify the proposed Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for settlement purposes only;

b.      Preliminarily approve this Agreement as fair, reasonable and adequate under Rule 23 of the Federal Rules of Civil Procedure subject to final determination by the Court;

c.      Approve the appointment of the Class Representatives as representatives of the Class for the Settlement and the appointment of Class Counsel as counsel for the Class for the Settlement;

d.      Approve a form of Notice in the same or substantially the same form as Exhibit 1, Exhibit 2, and Exhibit 3 attached to the Settlement Agreement hereto;

e.      Direct the Settlement Administrator, within thirty (30) days after entry by the Court of the Preliminary Approval Order, to disseminate the Notice and Claim Form in the same or substantially the same form as Exhibit 1, Exhibit 2, Exhibit 3 attached hereto to each individual on the Notice List by email and text message (and, where either an email address or phone number are unavailable, by mail).

f.      Direct the Settlement Administrator, within ten (10) days after entry by the Court of the Preliminary Approval Order, to establish the Settlement Website, which shall contain copies of the Agreement and Exhibits, including the Notice in the same or substantially the same form as Exhibit 1 and Exhibit 3 hereto;

g.      Direct Class Counsel to file their motion for attorneys' fees and costs.

h.      Schedule a Final Approval Hearing on final approval of this Settlement, including a hearing on the request for attorneys' fees and costs, at least one hundred and forty (140) days after entry of the Preliminary Approval Order;

i. Establish a procedure for Class Members to exclude themselves and set an Opt-Out Deadline, no later than fifty (50) days before the Final Approval Hearing, after which no Class Member shall be allowed to opt out of the Settlement and shall be bound to the terms of the Settlement;

j. Establish a procedure for Settlement Class Members to appear and/or object to the Settlement and set an Objection Deadline, no later than fifty (50) days before the Final Approval Hearing, after which no Settlement Class Member shall be allowed to object;

k. Require any attorneys representing Settlement Class Members, at the Settlement Class Member's expense, to file a notice of appearance;

l. Stay all proceedings in the Action against Discover, other than proceedings as may be necessary to carry out the terms and conditions of the Agreement;

m. Pending Final Approval, and upon expiration of the Opt-Out Deadline, bar each Settlement Class Member from maintaining, commencing, prosecuting or pursuing directly, representatively, or in any other capacity any Released Claim subsumed and covered by the Release in this Agreement in any court or arbitration forum;

n. Contain such other and further provisions consistent with the terms and provisions of this Agreement as the Court may deem advisable; and

o. Authorize the Parties to take all necessary and appropriate steps to establish the means necessary to implement the terms of this Agreement.

The proposed Settlement is the product of arms-length, good-faith negotiations; is fair, reasonable, and adequate to the putative Class; and should be preliminarily approved, as discussed in the attached memorandum.

The Unopposed Motion is based on the attached memorandum in support; the Declaration of Ossai Miazad in Support of Motion for Preliminary Settlement Approval (which annexes a copy of the Settlement Agreement); the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the motion.

Dated: January 12, 2024                  Respectfully submitted,


By: <u>*/s/ Ossai Miazad*</u>
    Ossai Miazad *(admitted pro hac vice)*
    **OUTTEN & GOLDEN LLP**
    1225 New York Avenue NW, Suite 1200B
    Washington, DC 20005
    Telephone:   (202) 847-4400
    Facsimile:    (202) 847-4410
    Email:  om@outtengolden.com

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND .................................... 2

    A.  Procedural History ...................................................................... 2

III.  THE PROPOSED SETTLEMENT ............................................................. 3

    A.  The Settlement Class.................................................................... 3

    B.  Settlement Overview.................................................................... 4

        1.  Programmatic Relief ......................................................... 4

        2.  Monetary Relief ................................................................ 5

        3.  Class Representative Service Awards.................................. 7

        4.  Attorneys' Fees and Costs ................................................. 8

        5.  Settlement Administration ................................................. 9

        6.  Cy Pres ............................................................................. 9

IV.  ARGUMENT ............................................................................................. 10

    A.  Certification of the Rule 23 Classes Is Proper ............................ 10

        1.  Rule 23(a) Is Satisfied..................................................... 11

        2.  Certification Is Proper Under Rule 23(b)(3) ...................... 12

        3.  Plaintiffs' Counsel Should Be Appointed as Class Counsel ............... 13

    B.  The Settlement Is Fair, Reasonable, And Adequate .................... 14

        1.  Plaintiffs' Case Faced Significant Hurdles on Liability and Class Certification.............. 14

        2.  The Settlement Amount Is Appropriate ............................ 15

        3.  The Extent of Discovery Supports Settlement.................... 17

        4.  Counsel's Experience and Views Support Approval........... 17

        5.  The Parties Participated in Arms-Length Negotiations Before Experienced Neutral Mediators ...................... 17

    C.  The Proposed Notice Is Clear and Adequate .............................. 18

V.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED............... 19

VI.  CONCLUSION........................................................................................... 20

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
   731 F.3d 952 (9th Cir. 2013) ...............................................................................11

*Alfredo M. Lopez et al. v. Am. Express Bank FSB*,
   No. 09 Civ. 07335 (C.D. Cal.) ................................................................................9

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..........................................................................................12, 13

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)...............................................................................................13

*Betancourt v. Advantage Human Resourcing, Inc.*,
   No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361 (N.D. Cal. Jan. 28, 2016) .............14, 15, 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .................................................................................9

*Buccellato v. AT&T Operations, Inc.*,
   No. 10 Civ. 463, 2011 U.S. Dist. LEXIS 85699 (N.D. Cal. June 30, 2011) ............................8

*Cancilla v. Ecolab, Inc.*,
   No. 12 Civ. 3001, 2015 U.S. Dist. LEXIS 106249 (N.D. Cal. Aug. 12, 2015)......................14

*Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
   No. 15 Civ. 224, 2016 U.S. Dist. LEXIS 1027 (N.D. Cal. Jan. 25, 2016) .............................11

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016) ...................................................................15

*Cunningham v. Cty. of Los Angeles*,
   879 F.2d 481 (9th Cir. 1988) .................................................................................9

*Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*),
   213 F.3d 454 (9th Cir. 2000) ...............................................................................17

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012)...........................................................................13

*Fernandez v. Victoria Secret Stores, LLC*,
   No. 06 Civ. 4149, U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) ..............................18

*Galeener v. Source Refrigeration & HVAC, Inc.*,
   No. 13 Civ. 04960, U.S. Dist. LEXIS 193092 (N.D. Cal. Aug. 20, 2015)..............................8

*Gehrich v. Chase Bank, USA, N.A.*,
    No. 12 Civ. 05510 (N.D. Ill.) ...................................................................................9

*Glass v. UBS Fin. Servs.*,
    No. 06 Civ. 4068, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ............................8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................10, 12, 14

*In re Heritage Bond Litig.*,
    No. 02 ML 1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .........................16

*Johnson v. Triple Leaf Tea, Inc.*,
    No. 14 Civ. 1570, 2015 U.S. Dist. LEXIS 170800 (N.D. Cal. Nov. 16, 2015).......................11

*Lewis et al v. Rodan & Fields, LLC*,
    No. 18 Civ. 02248 (N.D. Cal.) ...................................................................................9

*Lewis v. Wells Fargo & Co.*,
    No. 08 Civ. 2670, slip op. (N.D. Cal. Apr. 29, 2011) ...............................................8

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523, 525 (C.D. Cal. 2004) ...................................................10, 17

*Rabin v. PricewaterhouseCoopers LLP*,
    No. 16 Civ. 2276, 2021 U.S. Dist. LEXIS 41285 (N.D. Cal. Feb. 3, 2021) ...........................8

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .........................................................................14, 17

*Romero v. Perryman (In re Easysaver Rewards Litig.)*,
    906 F.3d 747 (9th Cir. 2018) .........................................................................9, 10

*Ross v. U.S. Bank Nat'l Ass'n*,
    No. 07 Civ. 2951, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010).......................8

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) .........................................................................9

*Stevens v. Harper*,
    213 F.R.D. 358 (E.D. Cal. 2002) ...................................................................11

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13 Civ. 2540, 2015 U.S. Dist. LEXIS 78671 (N.D. Cal. June 17, 2015) ........................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07 MDL 1827, 2013 U.S. Dist. LEXIS 49885 (N.D. Cal. Apr. 1, 2013) ........................8

*Tierno v. Rite Aid Corp.*,
    No. 05 Civ. 02520, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006).......................13

*Tijero v. Aaron Bros., Inc.*,
    301 F.R.D. 314 (N.D. Cal. 2013).........................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016).........................................................................................13

*Vedachalam v. Tata Consultancy Servs.*,
    No. 06 Civ. 963, 2013 U.S. Dist. LEXIS 100799 (N.D. Cal. July 18, 2013) ............8

*Walsh v. CorePower Yoga LLC*,
    No. 16 Civ. 5610, 2017 U.S. Dist. LEXIS 20974 (N.D. Cal. Feb. 14, 2017)...................12, 14

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
    No. 05 Civ. 2320, 2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sept. 14, 2006)........................13

*Wilkins v. HSBC Bank Nevada, N.A*,
    No. 14 Civ. 00190 (N.D. Ill.) ...........................................................................9

*Wren v. RGIS Inventory Specialists*,
    No. 06 Civ. 05778, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011)....................18

*Zepeda v. Paypal, Inc.*,
    No. 10 Civ. 02500 (N.D. Cal.)..........................................................................9

**STATUTES**

Cal. Civil Code § 52(a) ...................................................................................5, 16

**RULES**

Fed. R. Civ. P. 23(a) .................................................................................11, 12

Fed. R. Civ. P. 23(b)(3) ...................................................................................13

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................18

Fed. R. Civ. P. 23(e)(1).................................................................................10, 18

Fed. R. Civ. P. 23(g)(1)(A) ...............................................................................13

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions,* § 11:22 (4th ed. 2002)...........10

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.15 (5th ed.)...................14

*Illustrative Forms of Class Action Notices: Overview*, Fed. Judicial Ctr.,
    https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-
    introduction (last visited April 8, 2022)..................................................................18

*Manual for Complex Litigation (Fourth)* §§ 21.632-634 (2004)...................................10

Ufonobong Umanah, *Discover Bank Loses Appeal to Send DACA Bias Suit to Arbitration*, Bloomberg Law (July 25, 2023), https://news.bloomberglaw.com/banking-law/discover-bank-loses-appeal-to-send-daca-bias-suit-to-arbitration (last visited December 20, 2023)........................................8

Case No. 3:20-cv-06896-SI                    Plaintiffs' Motion for Preliminary Approval

**I.    <u>INTRODUCTION</u>**

Plaintiffs immigrated to the United States as children, and were granted temporary protection from deportation, work authorization, and Social Security numbers ("SSNs") under the June 2012 program known as Deferred Action for Childhood Arrivals ("DACA").  After obtaining DACA, work authorization, and SSNs, Plaintiffs applied (or attempted to apply) to Discover for student, personal, or home equity loan products but were told that they were not eligible for these products because of their citizenship status.  Plaintiffs filed this Action alleging that Discover's rejection of their loan applications was unlawful and violated anti-discrimination laws.  After years of litigation and four mediations presided by two experienced mediators, the Parties have agreed to resolve this Action and respectfully request approval of their Settlement.

Critically, in connection with the settlement, Discover has agreed to review and, as necessary, change its lending policies to make credit and loans available to DACA recipients on the same terms and conditions as it offers credit to U.S. citizens, fully eliminating the harm challenged by the lawsuit, including Plaintiffs and class members who wish to reapply for Discover loans.  The settlement will also result in Discover paying $1,120,128, exclusive of attorneys' fees and costs awarded by the Court, in the form of a settlement fund of $979,500, to be awarded to individual class members and the class representatives and a separate payment by Discover to cover the cost of administering the settlement. (Settlement Agreement or SA) §§ 3.3.1, 6.1, 15.1.4, 15.2.1.[1]

For the reasons set forth below, the proposed Settlement satisfies the relevant standards for Court approval.  Specifically, the proposed Settlement Class meets the requirements for class certification under Federal Rule of Civil Procedure 23, and the settlement is fair, reasonable, and adequate.  Plaintiffs respectfully submit that the Court should approve this settlement and authorize notice to Class Members.

---

[1] All exhibits are attached to the accompanying Declaration of Ossai Miazad in Support of Motion for Preliminary Settlement Approval ("Miazad Decl.").

1

## II.   FACTUAL AND PROCEDURAL BACKGROUND

2

### A.   Procedural History

3

In July 2020, Plaintiffs Perez and Flavio Guzman Magaña[2], represented by the Mexican

4   American Legal Defense and Educational Fund (MALDEF), filed a class action complaint in San

5   Mateo County Superior Court on behalf of themselves and a putative class of similarly-situated

6   individuals who had federal work authorization but who were not U.S. citizens or nationals,

7   refugees, asylees or lawful permanent residents, and were denied or deterred from receiving

8   Discover's loan products, in violation of the California Unruh Civil Rights Act.

9

Discover removed the case to this Court under the Class Action Fairness Act ("CAFA").

10   Following removal, Perez and Guzman Magaña filed a First Amended Complaint adding a claim

11   under 42 U.S.C. § 1981 ("Section 1981") on behalf of all applicants denied access to loan

12   products because of their alienage and expanded the class scope from California-only to include

13   similarly-situated applicants nationwide.

14

In January 2021, Discover filed a motion to compel arbitration of Perez and Guzman

15   Magaña's claims.  Plaintiffs opposed the motion, and, during the pendency of the briefing,

16   agreed to stay the case so that the Parties could attend mediation.  After the first day of

17   mediation, Outten & Golden LLP, which represented Jimenez Magaña, an applicant who was

18   denied a home equity loan by Discover, joined MALDEF as co-counsel, and the parties

19   continued settlement discussions over the course of two half-day mediation sessions presided

20   over by the Honorable Carlos R. Moreno (Ret.). The Parties were unable to resolve the matter at

21   the mediations, and Plaintiffs filed a Second Amended Complaint on July 23, 2021, to add

22   Jimenez Magaña and his claims.

23

The Court held argument on the motion to compel arbitration on August 27, 2021.  In the

24   weeks following the hearing, Perez submitted a written request to Discover to opt out of the

25   arbitration agreement pursuant to the terms of the agreement. On September 23, 2021, the Court

26   issued an order compelling Guzman Magaña and Perez to arbitrate their claims. Following the

27

28

---

[2]      Flavio Guzman Magaña's claims have been stayed pending arbitration, and he is not a
class member or class representative in this case.

order, Perez filed a Motion for Leave to File Motion for Reconsideration on the grounds that she had opted out of the arbitration agreement, which was granted, followed by her Motion for Reconsideration. On February 4, 2022, the Court granted Perez's Motion, finding that her opt out request constituted a new fact that was grounds for reconsideration of the order granting the motion to compel arbitration and that Perez's opt out was valid. The Court vacated the portion of the order compelling Perez to arbitrate her claims.

Discover appealed the reconsideration order, filing its opening appeal brief on July 5, 2022. The appeal was perfected on October 24, 2022. Plaintiffs also propounded written discovery requests on Discover, and the Parties met and conferred over the course of several months over discovery disputes arising from the requests.[3] On May 20, 2022, Discover also moved to stay discovery pending resolution of the appeal. On September 13, 2022, Discover filed an answer to the Second Amended Complaint. *See* ECF No. 96. On February 7, 2023, the Court granted Discover's motion to stay pending appeal.

During the pendency of the stay and appeal, the Parties undertook further settlement discussions, with the assistance of Hunter Hughes, a third party neutral experienced in complex litigation. The Parties attended an in-person mediation with Mr. Hughes in San Diego on June 21, 2023. On July 18, 2023, the parties executed a settlement term sheet and requested a stay pending settlement, which the Court granted. *See* ECF Nos. 105, 106, 108.[4] Since that time, the Parties have diligently negotiated the settlement terms and accompanying documents. *Id.* On January 12, 2024, the Parties executed the Settlement Agreement.

### III. THE PROPOSED SETTLEMENT

#### A. The Settlement Class

For settlement purposes only and consistent with the Parties' settlement agreement, Plaintiffs seek certification of a Class defined as follows:

---

[3] On September 23, 2022, the Parties filed a joint application asking the Court to address the disputed discovery issues. (ECF No. 97)

[4] On July 24, 2023, the Ninth Circuit affirmed this Court's order granting reconsideration.

All individuals who: (1) according to Discover's records, applied for credit from Discover's student, personal or home loan lines of business between July 22, 2018, and the date of preliminary approval and were either declined credit or received credit after meeting Discover's requirement to have a United States citizen or lawful permanent United States resident co-signer; and (2) were recipients of valid and unexpired DACA, resided in the United States and were not citizens of the United States or lawful permanent United States residents at the time of the Discover loan application.[5]

Because Discover did not record whether non-citizen loan applicants had DACA and it is not otherwise discernible from Discover's records whether or not an applicant had DACA, its data set containing potential Class Members is therefore overinclusive, consisting of approximately 178,236 total international applicants in the United States who were born on/after June 15, 1981 (per DACA eligibility requirements) and rejected by Discover. Miazad Decl. ¶ 24. As Plaintiffs explain below, Class Members will be required to self-identify, using a Claim Form, and affirm that they are properly members of the Settlement Class. Informed by prior experience and discussions with Discover about the data, Plaintiffs estimate that approximately 10% of the overinclusive list are actually settlement class members.

**B.      Settlement Overview**

The Settlement provides two important forms of relief: (1) programmatic relief requiring Discover to review and, as appropriate, change its lending policies such that DACA applicants will be evaluated for consumer credit product eligibility on terms comparable to U.S. citizen applicants; and (2) a Settlement Fund that will compensate eligible Class Members.[6] The parties have agreed that the Settlement shall be administered as if governed by 28 U.S.C. § 1715, and Discover has agreed to provide CAFA Notice as required by that statute.

**1.      Programmatic Relief**

Subject to its lending requirements, Discover agrees to review and, as appropriate, modify its lending criteria to make DACA recipients eligible for loans on terms comparable to

---

[5]      Excluded from the Class are Discover, all officers, directors and employees of Discover, and their legal representatives, heirs or assigns, and any Judges to whom the Action is assigned, their staffs and their immediate families.
[6]      The Settlement provides that Class Counsel will separately seek an award of attorneys' fees.

U.S. citizens (the "Programmatic Relief").   SA § 3.2.1.  While it is difficult to quantify the benefit that the Programmatic Relief will convey to DACA recipients in the years to come, these changes will be extremely valuable. By removing additional lending requirements and eligibility bars, this policy shift eliminates the precise discriminatory harm that Plaintiffs sought to challenge and restores Plaintiffs and Class Members to equal footing with U.S. citizen applicants.  As a major lender of student, personal, and home loans, Plaintiffs hope and expect that Discover's decision to open its suite of consumer lending products to DACA recipients will have a positive impact on the consumer lending industry at large.

### 2.  Monetary Relief

Discover has also agreed to create a $979,500 Settlement Fund that will cover payments to Class Members.  SA § 3.3.  Settlement administration costs which are substantial will not be paid out of the Settlement Fund; instead Discover will pay them separately. The combined settlement value when including settlement administration cost (excluding award of attorneys' fees and costs) is $1,120,128.  Miazad Decl. ¶ 21.

The plan of allocation fairly and adequately compensates Class Members.  California Class Members are eligible to receive up to $2,500 each in light of their potential entitlement to statutory damages under the Unruh Act (which provides for up to $4,000 per violation).  SA § 3.3.3; Cal. Civil Code § 52(a) (providing statutory damages of $4,000 per violation). National Class Members are eligible to receive up to $250, reflecting their potential entitlement to compensatory or nominal damages available under Section 1981.  *Id.*  This distinction is fair and reasonable given that statutory damages under California's Unruh Act are more definite and are not available to applicants who did not reside in California at the time they applied for a loan. Miazad Decl. ¶ 21.

In the event the total amount of claims exceeds the available Settlement Fund, the payments will convert to a pro rata share, with each California Class Member receiving ten times the pro rata share of each National Class Member.  SA § 3.3.3.  In the event that the combined total payments to Class Members is *less* than the amount for distribution in the Settlement Fund, the remaining amount will be redistributed to Class Members based on the aforementioned

allocation formula, with no individual payment to exceed $16,000. *Id.* Any residual amount, as a result of uncashed checks or otherwise, will be paid on a *cy pres* basis to The Dream.US, discussed in more detail below. Payment to any *cy pres* recipient shall occur within 30 days after the last void date of any payments. *Id.* § 3.3.4.

Within 30 days of preliminary approval, the Settlement Administrator will distribute Notice to all Class Members by email and text message (and, where either an email address or phone number are unavailable, by mail). SA §§ 7.3; Exs. 1 (Email Notice), and 2 (Text). Consistent with modern best practices, the Settlement Administrator will maintain a dual-language (English-Spanish) website providing the Notice, Claim Form, information about deadlines and other relevant dates, key pleadings and orders and Class Counsel's contact information. *Id.* §§ 7.3. The Settlement Administrator will also create a dual-language (English-Spanish) toll-free phone number to field questions from Class Members. *Id.* Reminder notices will be sent via email and text, if such contact information is readily available, 30 days after the mailing of the Notice to remind Class Members of their opportunity to complete their Claim Forms. *Id.* § 7.6; Ex. 7 (Reminder Notice). Class Members will have at least 60 days to submit a Claim Form, and at least 45 days to opt out of the settlement by filing a written Request to Opt Out with the Settlement Administrator. SA §§ 1.6, 1.26. The deadline for Class Members to object to the settlement will be no later than 50 days before the Final Approval Hearing. *Id.* §1.24.

To make a claim, Class Members will be required to complete, sign and submit a verification form ("Verified Claim Form") to the Settlement Administrator. *Id.* § 1.39, 5.2. The Claim Form will require each claimant to affirm that they: (1) applied for and were denied, rejected, declined, cancelled, or determined ineligible for a loan from Discover during the applicable period; and (2) through a sworn statement, that they had valid and unexpired DACA status, a United States address, and a Social Security Number or ITIN at the time of the denied application for which they are making the claim. *Id.* § 5.2. If there is a reasonable suspicion regarding the claimed DACA status of any individual or group of individuals who submits a Claim Form, Class Counsel or Defense Counsel may, within 14 days after the Claim Deadline,

direct the Settlement Administrator to contact any such individual and ask them to submit Official Documentation[7] of their DACA status. *Id.* § 5.2.2. Claim Forms may be submitted online or by email or mail. *Id.* Ex. 3 (Claim Form).

In exchange for the monetary consideration described above, each Class Member will release Discover from any and all claims relating to Discover's denial of the Class Member's loan applications based on alienage, lack of citizenship and/or immigration status, including, but not limited to, any claims under Section 1981, the Unruh Act, other federal or state civil rights statutes, the Equal Credit Opportunity Act, and the Fair Credit Reporting Act (the "Released Claims").[8] SA §§ 1.31, 10. The Class Representatives will also execute a general release of all claims. *Id.* § 13.1. In the event that more than 100 Settlement Class Members exclude themselves from the Settlement Class, Discover shall have the right (but not the obligation) to terminate the Settlement and Agreement. *Id.* § 13.3.

### 3.    Class Representative Service Awards

The Settlement Agreement provides that, subject to Court approval, and conditioned on each Class Representative granting Discover a general release, Plaintiffs Perez, Jimenez Magana, and Felix will receive Service Awards of up to $8,000 each, to be paid from the Settlement Fund. SA § 15.2. These amounts will be separate from the recovery to which these Plaintiffs will be entitled under the Settlement as Class Members. *Id.*

Service Awards of $8,000 are reasonable as they are intended to compensate Plaintiffs for (a) the significant time and effort they have spent in advance of the filing of their claims and during the pendency of the litigation assisting Class Counsel with the prosecution of these claims, (b) the resulting significant value they have conferred to Class Members, and (c) the

---

[7]    Official Documentation may include either: (1) a copy of an I-797 Approval Notice from an I-821D request for Consideration for Deferred Action for Childhood Arrivals; or (2) a copy of a Work Authorization Card containing the code "C-33." *Id.* Ex. 4.

[8]    Although this release is broader than the claims pled in the complaint, it is limited to the subject matter of the operative complaint, and Class Counsel are unaware of any additional claims it would extinguish. Beyond the Unruh Act, no other state law civil rights statutes provide comparable statutory penalties for claims related to the denial of Class Members' loan applications based on alienage, lack of citizenship and/or immigration status.

significant exposure they incurred by exposing themselves as DACA recipients in a class action

lawsuit that has garnered media coverage.[9]

The requested Service Awards fall within the range of reasonableness for such awards in

the Ninth Circuit.  Courts in this District have held that service awards exceeding those requested

here are appropriate where class representatives, like those here, make substantive contributions

to the case, sign releases that are broader than the ones signed by other class members, and

"undertak[e] th[e] litigation at considerable personal and professional risk."  *Rabin v.*

*PricewaterhouseCoopers LLP*, No. 16 Civ. 2276, 2021 U.S. Dist. LEXIS 41285, at *29 (N.D.

Cal. Feb. 3, 2021) (approving service awards of $20,000 to each named plaintiff); *Galeener v.*

*Source Refrigeration & HVAC, Inc.*, No. 13 Civ. 04960, U.S. Dist. LEXIS 193092, at *11 (N.D.

Cal. Aug. 20, 2015) ($27,000 and $25,000 to two class representatives); *Vedachalam v. Tata*

*Consultancy Servs.*, No. 06 Civ. 963, 2013 U.S. Dist. LEXIS 100799, at *7 (N.D. Cal. July 18,

2013) (granting service awards of $35,000 and $25,000 to class representatives); *In re TFT-LCD*

*(Flat Panel) Antitrust Litig.*, No. 07 MDL 1827, 2013 U.S. Dist. LEXIS 49885, at *101 (N.D.

Cal. Apr. 1, 2013) (approving service awards of $15,000 to each named plaintiff); *Buccellato v.*

*AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 U.S. Dist. LEXIS 85699, at *6 (N.D. Cal. June

30, 2011) ($20,000 to lead plaintiff); *Lewis v. Wells Fargo & Co.*, No. 08 Civ. 2670, slip op. at 4

(N.D. Cal. Apr. 29, 2011), ECF No. 315 ($22,000 and $20,000 for named plaintiffs); *Ross v. U.S.*

*Bank Nat'l Ass'n*, No. 07 Civ. 2951, 2010 U.S. Dist. LEXIS 107857, at *9-10  (N.D. Cal. Sept.

29, 2010) ($20,000 service award for each of the four class representatives); *Glass v. UBS Fin.*

*Servs.*, No. 06 Civ. 4068, 2007 U.S. Dist. LEXIS 8476, at *52 (N.D. Cal. Jan. 26, 2007)

($25,000 to each of four class representatives).

### 4.    Attorneys' Fees and Costs

As provided for in the Settlement Agreement, Class Counsel will separately file an

application for  attorneys' fees and expenses based on the time and costs actually incurred in this

---

[9]    *See, e.g.*, Ufonobong Umanah, *Discover Bank Loses Appeal to Send DACA Bias Suit to Arbitration*, Bloomberg Law (July 25, 2023), https://news.bloomberglaw.com/banking-law/discover-bank-loses-appeal-to-send-daca-bias-suit-to-arbitration (last visited December 20, 2023).

1   Action.  SA § 15.  Any awarded amounts will not be deducted from the Settlement Fund, but

2   rather will be paid separately by Discover.  *Id.* § 15.1.4.

3       In non-common fund cases brought under fee shifting statutes, such as Section 1981 and

4   the Unruh Act, the lodestar method for awarding attorneys' fees is appropriate.  *In re Bluetooth*

5   *Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  The lodestar figure is

6   "presumptively reasonable."  *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir.

7   1988).  Class Counsel will move for an award of attorneys' fees and costs and an award of

8   service payments within 30 calendar days following the entry of the Court's Preliminary

9   Approval Order.[10]

10              **5.    Settlement Administration**

11      The Settlement Agreement provides that Discover will pay the cost of a Settlement

12  Administrator.  The Parties have selected Epiq as Settlement Administrator. Epiq has agreed to

13  perform all administration work set forth in the Settlement Agreement.  Miazad Decl. ¶¶ 34-37.

14  Defendant's counsel has retained Epiq to administer the claims process in five other cases over

15  the past 10 years, including cases with complex claims processes like this one. *See, e.g.*, *Alfredo*

16  *M. Lopez et al. v. Am. Express Bank FSB* (No. 09 Civ. 07335 (C.D. Cal.)); *Gehrich v. Chase*

17  *Bank, USA, N.A.* (No. 12 Civ. 05510 (N.D. Ill.)); *Zepeda v. Paypal, Inc.* (No. 10 Civ. 02500

18  (N.D. Cal.)); *Wilkins v. HSBC Bank Nevada, N.A* (No. 14 Civ. 00190 (N.D. Ill.)); *Lewis et al v.*

19  *Rodan & Fields, LLC* (No. 18 Civ. 02248 (N.D. Cal.)).

20              **6.    Cy Pres**

21      Any funds resulting from Class Members' uncashed checks shall be given as a *cy pres*

22  donation to The Dream.US. in accord with best practices.  SA § 3.3.4; *see also Six (6) Mexican*

23  *Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (holding that *cy pres*

24  distribution is appropriate "for the limited purpose of distributing the unclaimed funds"); *Romero*

25  *v. Perryman (In re Easysaver Rewards Litig.)*, 906 F.3d 747, 760-61 (9th Cir. 2018) (same).

26

27  [10] As set forth in the Settlement Agreement, Discover does not object to Class Counsel seeking
    an award of attorneys' fees and expenses but reserves its right to challenge the amount of
28  attorneys' fees and expenses sought.  (SA § 15.1.2).

1      The Dream.US is the nation's largest college and career success program for

2   undocumented immigrant youth and has provided more than 10,000 college scholarships to

3   DACA recipients.  *Id.*  The organization's mission aligns with Class Members' interests in

4   seeking equitable access to consumer loan products for DACA recipients and other immigrant

5   applicants, including with respect to student loans and loan refinancing.  Miazad Decl. ¶ 47; *see*

6   *also In re Easysaver*, 906 F.3d at 761-62 (*cy pres* recipients "should be selected in light of 'the

7   objectives of the underlying statute(s)'" and the interests of the class) (quoting *Nachshin v. AOL,*

8   *Ltd. Liab. Co.*, 663 F.3d 1034, 1036 (9th Cir. 2011)))．  Neither the Parties nor their counsel have

9   any relationship with The Dream.US.  Miazad Decl. ¶ 48.

10  **IV.    ARGUMENT**

11     Settlement approval "involves a two-step process in which the Court first determines

12  whether a proposed class action settlement deserves preliminary approval and then, after notice

13  is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomm. Coop. v.*

14  *DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Fed. R. Civ. P. 23(e)(1)(B);

15  *Manual for Complex Litigation (Fourth)* §§ 21.632-634 (2004).  Preliminary approval requires

16  two elements: First, the court must determine that it "will likely be able to . . . certify the class

17  for purposes of judgment on the proposal," if it has not yet been certified, Fed. R. Civ. P.

18  23(e)(1)(B)(ii), and second, it "will likely be able to . . . approve the proposal under Rule

19  23(e)(2)" as  fair, reasonable, and adequate, *id.* 23(e)(1)(B)(i). *See Hanlon v. Chrysler Corp.*, 150

20  F.3d 1011, 1025-26 (9th Cir. 1998), *overruled in part on other grounds as recognized by*

21  *Benipayo v. Volkswagen Grp. of Am., Inc. (In re Volkswagen "Clean Diesel" Mktg., Sales*

22  *Practices & Prods. Liab. Litig.)*, 975 F.3d 770, 777-78 (9th Cir. 2020).

23     **A.    Certification of the Rule 23 Classes Is Proper.**

24     For settlement purposes, the parties agree to certification of a national class as defined in

25  the Settlement Agreement. "The validity of use of a temporary settlement class is not usually

26  questioned." Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions,* § 11:22 (4th ed.

27  2002).  The relevant factors also weigh in favor of certification.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    Rule 23(a) Is Satisfied.

<u>First</u>, numerosity is met because joinder of Class Members would be impractical. Fed. R. Civ. P. 23(a)(1).  Plaintiffs estimate that thousands of individuals were denied loans because they had DACA, and would be eligible to participate in the Settlement as Class Members.   Miazad Decl. ¶¶ 24-26.  Further, potential Class Members are "geographically dispersed" nationwide which supports a finding of numerosity.  Miazad Decl. ¶ 25.  *See Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15 Civ. 224, 2016 U.S. Dist. LEXIS 1027, at *16 (N.D. Cal. Jan. 25, 2016) ("joinder may be impracticable where a class is geographically dispersed").

<u>Second</u>, commonality is met because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The Supreme Court has stated that the focus of the commonality inquiry is on whether there are common issues of fact among class members and "whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs.*, *Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Here, common questions include whether Discover's lending policies deny Plaintiffs and Class Members the opportunity to be considered for credit because of their alienage or immigration status and whether Discover's lending policies violate Section 1981 or the Unruh Act.  Further, Plaintiffs assert liability based on Discover's uniform policy of denying loan applications because of the applicants' immigration status.[11]

<u>Third</u>, typicality is satisfied.  Typicality requires a finding that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Under the rule's "permissive" standard, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Johnson v. Triple Leaf Tea, Inc.*, No. 14 Civ. 1570, 2015 U.S. Dist. LEXIS 170800, at *7 (N.D. Cal. Nov. 16, 2015) (quoting *Hanlon*, 150 F.3d at 1020).

---

[11]    *See, e.g.*, *Stevens v. Harper*, 213 F.R.D. 358, 377 (E.D. Cal. 2002) (in civil rights context, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members") (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001))).

1    Here, Plaintiffs are typical of the classes they propose to represent because (1) each lived

2    in the United States and in California, (2) each was a DACA recipient when they applied for a

3    Loan from Discover; and (3) each alleged that he or she was denied credit because he or she was

4    not a U.S. citizen or Lawful Permanent Resident pursuant to Discover's policies.

5    <u>Fourth</u>, Plaintiffs have "fairly and adequately protect[ed] the interests of the class."  Fed.

6    R. Civ. P. 23(a)(4).  The adequacy requirement is met where the class representatives: (1) have

7    common, and not antagonistic, interests with unnamed class members, and (2) will vigorously

8    prosecute the interests of the class through qualified counsel. *Hanlon*, 150 F.3d at 1020; *see also*

9    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

10   Here, adequacy is met because Plaintiffs have the same interests as other Class Members

11   and have shown that they can fairly and adequately protect Class Members' interests.  Like Class

12   Members, Plaintiffs were denied credit by Discover based on their alienage or immigration status

13   pursuant to Discover's lending policies.  Miazad Decl. ¶¶ 11-13.  Plaintiffs have no conflicts of

14   interest with the Class Members, and Class Members stand to benefit substantially from

15   Plaintiffs' pursuit of damages on their behalf.  Plaintiffs have vigorously represented the interests

16   of their fellow Class Members and devoted substantial time to the prosecution of this action,

17   including by being prepared to respond to discovery and sit for depositions and having numerous

18   phone calls and meetings with counsel.  Miazad Decl. ¶ 41.

19   In addition, Plaintiffs are represented by adequate counsel. Outten & Golden LLP and

20   MALDEF have extensive experience litigating complex civil rights and employment class

21   actions and have vigorously prosecuted this action.  Miazad Decl. ¶¶ 6-8 (collecting cases);

22   Declaration of Ernest I. Herrera ("Herrera Decl.") ¶¶ 6-8 (same); *see also, e.g.*, *Walsh v.*

23   *CorePower Yoga LLC*, No. 16 Civ. 5610, 2017 U.S. Dist. LEXIS 20974, at *2 (N.D. Cal. Feb.

24   14, 2017) ("[Outten & Golden] ha[s] a proven track record in the prosecution of class actions as

25   they have successfully litigated and tried many major class action cases.").

26   ## 2.    Certification Is Proper Under Rule 23(b)(3).

27   Rule 23(b)(3) requires that common questions predominate over individual ones, and that

28

-12-

a class action is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

First, the proposed class is sufficiently cohesive to satisfy predominance. *Amchem*, 521 U.S. at 623. Predominance does not require "that each element of [a plaintiff's] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks and citation omitted). Rather, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). Here, Plaintiffs challenge Discover's lending policies and eligibility criteria that apply to all Class Members.[12]

Second, the proposed class satisfies the superiority inquiry because the class mechanism will conserve judicial resources and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications. Superiority rests on factors like individual class members' desire to bring individual actions and the utility of concentrating the litigation in one forum. Fed. R. Civ. P. 23(b)(3). Here, "there is no indication[] that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason." *Tierno v. Rite Aid Corp.*, No. 05 Civ. 02520, 2006 U.S. Dist. LEXIS 71794, at *33 (N.D. Cal. Aug. 31, 2006); *see also Amchem*, 521 U.S. at 615. Individual lawsuits from hundreds of plaintiffs, for modest damages, would be wasteful and inefficient for the court system. *See, e.g.*, *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. 05 Civ. 2320, 2006 U.S. Dist. LEXIS 69193, at *30 (N.D. Cal. Sept. 14, 2006).

### 3. Plaintiffs' Counsel Should Be Appointed as Class Counsel.

Adequacy of class counsel depends on (1) work performed on the matter, (2) experience, (3) knowledge of the law, and (4) the resources counsel can commit. Fed. R. Civ. P. 23(g)(1)(A).

---

[12] *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 509, 538 (N.D. Cal. 2012) (predominance satisfied as to discrimination claims where plaintiffs challenged "specific practices" that applied "companywide").

-13-

Class Counsel readily satisfy these criteria, as set forth above. *See supra*, Part IV(A)(1); *see also* Miazad Decl. ¶¶ 1-10; Herrera Decl. ¶¶ 1-8.

### B.    The Settlement Is Fair, Reasonable, And Adequate.

Once the Court has found class certification proper, it must assess whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026.  Typically, the first-stage analysis looks for "obvious deficiencies," with preliminary approval being granted if the settlement is non-collusive and within the range of possible final approval. *Walsh*, 2017 U.S. Dist. LEXIS 20974, at *19 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).[13]

When considering whether to grant approval, courts often "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Courts may also assess the following factors, which are assessed in greater detail at final approval.  These factors are: (1) "the strength of the plaintiffs' case," "the risk, expense, complexity, and likely duration of further litigation," and "the risk of maintaining class action status throughout the trial," (2) "the amount offered in settlement," (3) "the extent of discovery completed and the stage of the proceedings," and (4) "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026.  In addition, courts review "the presence of a governmental participant" and "the reaction of the class members to the proposed settlement." *Id.*  These last two considerations are not significant here, as the former is not relevant, and the latter cannot be gauged at this stage.

### 1.    Plaintiffs' Case Faced Significant Hurdles on Liability and Class Certification.

"Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Betancourt v. Advantage Human Resourcing,*

---

[13] *See also Cancilla v. Ecolab, Inc.*, No. 12 Civ. 3001, 2015 U.S. Dist. LEXIS 106249, at *8 (N.D. Cal. Aug. 12, 2015) (focusing preliminary approval analysis on "noncollusive negotiations," the lack of "obvious deficiencies" or "preferential treatment," and being "with[in] the range of possible approval"); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.15 (5th ed.).

-14-

*Inc.*, No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361, at *9 (N.D. Cal. Jan. 28, 2016) (quoting *Chun—Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 851) (N.D. Cal. 2010).  Plaintiffs face substantial obstacles to full recovery.  First, liability is far from guaranteed.  This litigation—a lending discrimination class action on behalf of DACA recipients—presents a relatively novel theory with unsettled issues as to Discover's liability: Discover has vigorously contended that its policies are lawful and justified based on heightened risks inherent in lending to individuals with non-permanent immigration status. These issues have not been tested in litigation.  Discover may also highlight events in Plaintiffs' credit history to show that they were not qualified for the credit products they sought, regardless of their immigration status.

Plaintiffs also faced obstacles to obtaining class certification.  The great majority of loan applicants, including Perez and Felix, were required to agree to arbitrate any claims related to the denial of their applications, and although Plaintiffs prevailed on their argument that they could elect to opt out of arbitration (so long as their loans were not otherwise approved after meeting Discover's requirement to have a U.S. citizen or permanent resident co-signer), few applicants had yet to exercise that opt out right. Discover may also argue that certain applicants would have been denied credit regardless of immigration status, and that Class Members' claims cannot be tried collectively due to individualized differences in their applications and credit histories, thereby preventing a finding of predominance.

### 2.    The Settlement Amount Is Appropriate.

"[P]erhaps the most important factor" courts consider in determining whether to grant preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation marks omitted).  Here, the monetary and programmatic relief provide excellent value for Class Members.  Although the precise amount of the monetary awards per Class Member is not yet known, under any scenario the monetary relief under the Settlement is likely to be a high percentage of their maximum damages.  Similarly, the settlement provides the greatest degree of programmatic relief possible.

California Class Members are entitled to an individual award of up to $2,500, which amounts to 62.5% of the $4,000 statutory damages available under the Unruh Act for each discriminatory act.  Cal. Civil Code § 52(a).  This is an excellent result for California Class Members.[14]  In light of the risks of an adverse judgment on the merits or class certification, even awards lower than this amount would provide an excellent value.

National Class Members are entitled to individual awards of up to $250, which constitutes a strong recovery considering the challenges inherent in establishing Section 1981 liability class-wide and in certifying a class (as described above in Section IV(A)(1)).  In particular, Class Members will face significant challenges in establishing compensatory or nominal damages resulting from Discover's denial of their loan applications. Given the risks on class certification and the merits, even lower payments would constitute an excellent recovery for National Class Members.

Plaintiffs also obtained the *maximum* degree of programmatic relief that Class Members could possibly obtain:  Discover will review, and as appropriate amend, its lending policies and procedures for its student lending, personal lending and home loan lines of business to ensure that DACA applicants will be evaluated for credit eligibility on terms comparable to U.S. citizens.  All DACA recipients nationwide—not just Class Members—will benefit from this relief, enabling hundreds of thousands of individuals to obtain credit under Discover's comparatively advantageous rates. Thus, the Programmatic Relief achieved here provides a significant benefit to Class Members (and DACA recipients nationwide) and is as good or better than what could have been obtained by protracted litigation and trial.

---

[14]    *See, e.g.*, *Betancourt*, No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361, at *13-14 (N.D. Cal. Jan 28, 2016) (granting final approval of settlement providing approximately 9.7% of total maximum potential recovery if class members had prevailed on all claims); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13 Civ. 2540, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. June 17, 2015) (finding that a settlement constituting 7.3% of plaintiff's estimated trial award to be "within the range of reasonableness); *In re Heritage Bond Litig.*, No. 02 ML 1475, 2005 U.S. Dist. LEXIS 13555, at *62 (C.D. Cal. June 10, 2005) (calling a recovery of 36% of the total net loss an "exceptional result").

### 3. The Extent of Discovery Supports Settlement.

A settlement requires adequate discovery. The touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery. *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, Plaintiffs have litigated these claims zealously for over three years – up to and including litigating an appeal to the Ninth Circuit – conducting both formal and informal discovery along the way. The Parties also explored the strengths and weaknesses of the claims and defenses during their negotiations. Thus, the Settlement results from Class Counsel's informed judgment.

### 4. Counsel's Experience and Views Support Approval.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *DIRECTV, Inc.*, 221 F.R.D. at 528 (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]" *Rodriguez*, 563 F.3d at 967.

Here, Class Counsel are some of the most experienced class action litigators in the country in this area. Miazad Decl. ¶¶ 1-10; Herrera Decl. ¶ 6-8. Class Counsel specialize in prosecuting complex employment and civil rights class actions, and over many years have successfully—and unsuccessfully—litigated many such cases, putting them in a strong position to weigh the strengths and weaknesses of Plaintiffs' claims and Discover's defenses. *Id.*; *see also* Ex. 1 (listing comparable past distributions). Based on their extensive experience, Class Counsel believe that the Settlement is fair, reasonable, and adequate.

### 5. The Parties Participated in Arms-Length Negotiations Before Experienced Neutral Mediators.

A settlement reached "in good faith after a well-informed arms-length negotiation" is

presumed to be fair. *Fernandez v. Victoria Secret Stores, LLC*, No. 06 Civ. 4149, U.S. Dist.

LEXIS 123546, at *15 (C.D. Cal. July 21, 2008).[15]  Here, the Settlement was reached following:

hard-fought adversarial litigation, with extensive discovery and motion practice, including an

appeal to the Ninth Circuit; four mediation sessions, overseen by two different highly

experienced mediators with particular expertise in complex class actions; and months of further

negotiations between the Parties. Miazad Decl. ¶¶ 16-19.

### C.    The Proposed Notice Is Clear and Adequate.

The proposed Notices are the "best notice that is practicable under the circumstances."

Fed. R. Civ. P. 23(c)(2)(B), and are "reasonable," Fed. R. Civ. P. 23(e)(1). Under the terms of

the Settlement, the Settlement Administrator will email and text the Notice with the Claim Form

(where an email address and/or phone number is available). Where an email address and phone

number are not both available, the Settlement Administrator will send the Notice by U.S. First

Class Mail as well.

The Notice and Claim Form are consistent with Northern District of California's

Procedural Guidance for Class Action Settlements and modern best practices set forth by the

Federal Judicial Center.[16] SA Exs. 1-3.  The Notice, Text Message, and Claim Form are written

in plain language and include: (1) contact information for Class Counsel; (2) the address for a

website maintained by the Settlement Administrator that will link to important documents in the

case; and (3) instructions on how to access the case docket via PACER.  The Notice and Text

Message will state the date of the fairness hearing, that the date may change without further

notice to the Class, and that Class Members should check the settlement website or the Court's

PACER site to confirm that the date has not been changed. The Notice and Text Message explain

the deadlines for objecting, opting out, and submitting a Claim Form.

---

[15]    *See also Wren v. RGIS Inventory Specialists*, No. 06 Civ. 05778, 2011 U.S. Dist. LEXIS 38667, at *42 (N.D. Cal. Apr. 1, 2011); *Tijero v. Aaron Bros., Inc*., 301 F.R.D. 314, 325 (N.D. Cal. 2013) (private mediation "support[s] the conclusion that the settlement process was not collusive").

[16]    *See Illustrative Forms of Class Action Notices: Overview*, Fed. Judicial Ctr., https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last visited April 8, 2022).

-18-

1
2
3
4
5

The Claim Form is also clear, user-friendly, and focused on the key information concerning Class Members. The Claim Form is helpfully pre-printed with a fillable and returnable verification form and Form W-9 (with postage pre-paid) to ensure that claimants receive optimal tax treatment for their class payments. It will also be available online so that Class Members can submit Claim Forms via a secure online submission form, or via email.

6

## V.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

7
8

The parties propose the following schedule for finalizing and implementing the Settlement and determining the amount of attorneys' fees and costs.:

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| Event | Proposed Date |
|---|---|
| **Preliminary Approval Hearing** | February 23, 2024 |
| Court enters Preliminary Approval Order*[17] | March 8, 2024 |
| Settlement Administrator establishes website | March 18, 2024 |
| Discover provides class notice list data to Settlement Administrator | March 22, 2024 |
| Class Counsel files application for Attorneys' Fees and Costs | April 8, 2024 |
| Settlement Administrator disseminates Notice | April 8, 2024 |
| Settlement Administrator disseminates Reminder Notice | May 8, 2024 |
| Settlement Administrator re-mails notice and claim form if returned as undeliverable | May 23, 2024 |
| Deadline for Class Members to file Claim Forms, opt out, and/or object | June 6, 2024 |
| Settlement Administrator provides a list of objectors, if any, to the Court | June 17, 2024 |
| Settlement Administrator provides a list of timely opt-outs, if any, to Class Counsel and Defense Counsel | June 20, 2024 |
| End of the Claim Period | June 21, 2024 |
| Plaintiffs file Final Approval motion | June 21, 2024 |
| Deadline for Class Members to submit Official Documentation, if requested | July 12, 2024 |
| **Hearing on Final Approval of the Settlement, Motion for Service Awards and Motion for Attorneys' Fees and Costs** | At least 140 days from Order on Preliminary Approval |

26
27
28

---

[17]    *Assumed date for purposes of calculating subsequent dates.

**VI.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court approve their Settlement. A Preliminary Approval Order has been submitted for the Court's convenience. Ex. 5.

Respectfully submitted,

Dated: January 12, 2024          By:    */s/ Ossai Miazad*

Ossai Miazad *(admitted pro hac vice)*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW, Suite 1200B
Washington, DC 20005
Telephone:   (202) 847-4400
Facsimile:    (202) 847-4410
Email:  om@outtengolden.com

Chauniqua D. Young *(admitted pro hac vice)*
Rebecca L. Pattiz *(admitted pro hac vice)*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:   (212) 245-1000
Facsimile:    (646) 509-2060
Email:  cyoung@outtengolden.com
Email:  rpattiz@outtengolden.com

Thomas A. Saenz (SBN 159430)
Ernest I. Herrera (SBN 335032)
**MEXICAN AMERICAN LEGAL**
**DEFENSE AND EDUCATIONAL FUND**
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone:   (213) 629-2512
Facsimile:    (213) 629-0266
Email:  tsaenz@maldef.org
Email:  eherrera@maldef.org

*Attorneys for Plaintiffs Iliana Perez, Josue Jimenez*
*Magaña, and Emiliano Galicia Felix and The*
*Proposed Class*