Thomas A. Saenz (SBN 159430)
Ernest I. Herrera (SBN 335032)
**MEXICAN AMERICAN LEGAL**
**DEFENSE AND EDUCATIONAL FUND**
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone:  (213) 629-2512
Facsimile:  (213) 629-0266
Email:  tsaenz@maldef.org
Email:  eherrera@maldef.org

Chauniqua D. Young *(admitted pro hac vice)*
Rebecca L. Pattiz *(admitted pro hac vice)*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060
Email:  cyoung@outtengolden.com
Email:  rpattiz@outtengolden.com

Ossai Miazad *(admitted pro hac vice)*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW, Suite 1200B
Washington, DC 20005
Telephone:  (202) 847-4400
Facsimile:  (202) 847-4410
Email:  om@outtengolden.com

Adam Koshkin (SBN 320152)
**OUTTEN & GOLDEN LLP**
One California, 12th Floor,
San Francisco, CA 94111
Telephone: (415) 322-1391
Facsimile: (415) 638-8810
Email: akoshkin@outtengolden.com

*Attorneys for Plaintiffs Iliana Perez, Josue Jimenez Magaña,*
*and Emiliano Galicia Felix and the Class*

**UNITED STATES DISTRICT COURT FOR THE NORTHERN**
**DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ILIANA PEREZ, JOSUE JIMENEZ MAGAÑA, and EMILIANO GALICIA FELIX, individuals, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> DISCOVER BANK, a Delaware corporation, <br><br> Defendant. | Case No. 3:20-cv-06896-SI <br><br> **NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND SERVICE AWARDS** <br><br> Judge: Susan Illston <br><br> Dept: Via Videoconference <br> Hearing Date: August 30, 2024 <br> Hearing Time: 10:00 a.m. |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 30, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard, via videoconference to Courtroom 1 on the 17th floor of this Court's San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Iliana Perez, Josue Jimenez Magaña, and Emiliano Galicia Felix, individually and as class representatives on behalf of the Class (together "the Class Representatives"), will, and hereby do, move this Court for an order: (1) granting, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, final approval of the parties' proposed class action settlement ("Settlement"), and entry of judgment in accordance with the Settlement; and (2) granting, pursuant to Rules 23(a) and 23(b)(3), final class certification of the Settlement Class conditionally certified in the Preliminary Approval Order. ECF No. 123.

Plaintiffs make this motion on the grounds that the Settlement is fair, adequate, and reasonable, was reached through arm's-length negotiations with an experienced mediator, and has drawn a highly favorable response from the Class, as described in the attached memorandum. The Settlement Agreement provides three important forms of relief for the Class Members: (1) programmatic relief whereby Discover will change its lending policies such that DACA applicants will be evaluated for consumer credit product eligibility on the same terms as U.S. citizen applicants; (2) a Settlement Fund of $979,500 to compensate Class Members who choose to file claim forms and a separate payment by Discover of the costs to administer the settlement, with an initial estimate of $140,628 and (3) separate payment by Discover of Class Counsel's attorneys' fees and costs, in an amount to be determined by the Court.

This Motion is noticed to be heard with Plaintiffs' previously filed Motion for Approval of Attorneys' Fees and Costs. ECF No. 126. The Court preliminarily approved the Settlement Agreement on February 29, 2024. ECF No. 123. Since then, Notice was provided to the settlement Class Members. Only one Class Member has opted out of the settlement[1]

---

[1]     Two additional individuals submitted opt out requests, but those individuals were

1   and no Class Member has objected.  The motion is based on this notice of motion and motion;

2   the memorandum in support of the motion; the accompanying Declaration of Ossai Miazad

3   ("Miazad Decl."); the Declaration of Cameron R. Azari for Epiq Global, Inc. ("Epiq"); the

4   declarations of Iliana Perez, Josue Jimenez Magaña, and Emiliano Galicia Felix; the Court's

5   record of this action; all matters of which the Court may take notice; and any oral evidence

6   presented at the final approval hearing on the motion.

7   Dated: July 31, 2024                              Respectfully submitted,

8                                                     By:  /s/ Ossai Miazad
9                                                             Ossai Miazad

10                                                    Ossai Miazad (*pro hac vice*)
11                                                    **OUTTEN & GOLDEN LLP**
                                                      1225 New York Ave NW, Suite 1200B
12                                                    Washington, D.C. 20005
                                                      Telephone: (202) 914-5097
13                                                    Facsimile: (202) 847-4410
                                                      om@outtengolden.com
14
15                                                    Chauniqua D. Young *(pro hac vice)*
                                                      Rebecca L. Pattiz *(pro hac vice)*
16                                                    **OUTTEN & GOLDEN LLP**
                                                      685 Third Avenue, 25th Floor
17                                                    New York, NY 10017
                                                      Telephone:   (212) 245-1000
18                                                    Facsimile:   (646) 509-2060
19                                                    Email:  cyoung@outtengolden.com
                                                      Email:  rpattiz@outtengolden.com
20
21                                                    Adam Koshkin (SBN 320152)
                                                      **OUTTEN & GOLDEN LLP**
22                                                    One California, 12th Floor,
23                                                    San Francisco, CA 94111
                                                      Telephone: (415) 322-1391
24                                                    Facsimile: (415) 638-8810
                                                      Email: akoshkin@outtengolden.com
25

26

27

28   determined not to be a class member, making the opt-outs ineffective.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thomas A. Saenz (SBN 159430)
Ernest I. Herrera (SBN 335032)
**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL
FUND**
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone:    (213) 629-2512
Facsimile:    (213) 629-0266
Email:  tsaenz@maldef.org
Email:  eherrera@maldef.org

*Attorneys for Plaintiffs and the
Class*

Case No. 3:20-cv-06896-SI          PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
                                   CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT BACKGROUND ..............................................................................2

        A.      Settlement Negotiations and Preliminary Approval ...............................2

        B.      Settlement Overview ...............................................................................3

                1.      Programmatic Relief ....................................................................3

                2.      Monetary Relief ...........................................................................4

                3.      The Settlement Class ....................................................................4

        C.      Notice and Claims Process .....................................................................5

        D.      CAFA Notice Requirements Were Satisfied .......................................... 7

III.    ARGUMENT ........................................................................................................7

        A.      The Best Practicable Notice of Settlement Has Been Provided to the Class........7

        B.      Final Certification of the Rule 23 Classes is Proper ............................. 8

        C.      Final Approval of the Class Action Settlement Should Be Granted Because the
                Settlement Is Fair, Adequate, and Reasonable and Appropriate under
                Rule 23 .................................................................................................. 9

                1.      Plaintiffs' Case Faced Significant Hurdles on Liability and Class
                        Certification .............................................................................. 10

                2.      The Settlement Amount Is Appropriate ................................... 10

                3.      The Extent of Discovery Supports Settlement......................... 12

                4.      Counsel's Experience and Views Support Approval............... 12

                5.      Class Members Have Reacted Positively to the Settlement ......... 12

                6.      The Requirements for Approval under Rule 23(e)(2) Are Met ............. 13

        D.      The Requested Service Awards Are Reasonable In Light of Their Contributions
                and Risk .................................................................................................. 15

IV.     CONCLUSION.................................................................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**                                                                                                    **PAGE(S)**

3

*Bert v. AK Steel Corp.*,
    No. 12 Civ. 467, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio Oct. 23, 2008) ......................15

*Betancourt v. Advantage Human Resourcing, Inc*.,
    No. 14 Civ. 01788, 2016 U.S. Dist. LEXIS 10361 (N.D. Cal. Jan. 28, 2016) ..............10, 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...............................................................................................15

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .................................................................................................7

*Churchill Village, LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...................................................................................................7

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ...............................................................................................16

*Cotter v. Lyft, Inc.*,
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ............................................................................ 10-11

*Covillo v. Specialty's Café*,
    No. C-11-00594, 2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014).........................17

*Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*),
    213 F.3d 454 (9th Cir. 2000) ................................................................................................12

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)................................................................................................................7

*Fernandez v. Victoria Secret Stores, LLC*,
    No. 06 Civ. 4149, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) ....................14

*Ford v. CEC Entm't Inc.*,
    No. 14 Civ. 677, 2015 U.S. Dist. LEXIS 191966 (S.D. Cal. Dec. 14, 2015) ........................8

*Gonzalez v. Pritzker*,
    No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277 (S.D.N.Y. Sept. 20, 2016) ...................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................................9, 14

*In re Heritage Bond Litig.*,
    No. 02 Civ. 1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)......................11

28

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................................ 13

*Mills v. Capital One, N.A.*,
    No. 14 Civ. 1937, 2015 U.S. Dist. LEXIS 133530 (S.D.N.Y. Sept. 30, 2015) .................... 14

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*,
    112 Cal. Rptr. 3d 324 (Cal. Ct. App. 2010) ............................................................ 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................... 12, 13

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................................................ 16

*Reed v. Balfour Beatty Rail, Inc.*,
    No. 21 Civ. 1846, 2023 U.S. Dist. LEXIS 128546 (C.D. Cal. June 22, 2023) .................... 17

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................... 9, 12, 15, 16

*Roes v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ...................................................................... 10, 14

*Sebastian v. Sprint/United Mgmt. Co.*,
    2019 U.S. Dist. LEXIS 225167 (C.D. Cal. Dec. 5, 2019) ...................................... 17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................... 9, 16

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13 Civ. 2540, 2015 U.S. Dist. LEXIS 78671 (N.D. Cal. June 17, 2015) .................... 11

*Taha v. Bucks Cty. Pa.*,
    No. 12 Civ. 6867, 2020 U.S. Dist. LEXIS 222655 (E.D. Pa. Nov. 30, 2020) .................... 17

*Tijero v. Aaron Bros., Inc.*,
    301 F.R.D. 314 (N.D. Cal. 2013) ...................................................................... 14

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) .................................................................. 16, 17

*Victorino v. FCA US LLC*,
    No. 16 Civ. 1617, 2020 U.S. Dist. LEXIS 155991 (S.D. Cal. Aug. 27, 2020) .................... 8

*In re Zoom Video Communs., Inc. Privacy Litig.*,
    No. 20 Civ. 2155, 2022 U.S. Dist. LEXIS 94857 (N.D. Cal. Apr. 21, 2022) .................... 13

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
                                        CLASS ACTION SETTLEMENT

**STATUTES**

28 U.S.C. § 1715(d) ................................................................................................................7

Cal. Civil Code § 52(a) ..........................................................................................................11

**RULES**

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

**OTHER AUTHORITIES**

Bob Egelko, *Discover Bank to Pay Nearly $1M Over Claims It Denied Loans to
    DACA Recipients*, San Francisco Chronicle, March 11, 2024,
    https://www.sfchronicle.com/politics/article/discover-bank-daca-
    18891661.php...........................................................................................................17

**<u>MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL</u>**

**I.     INTRODUCTION**

Plaintiffs Iliana Perez, Josue Magaña, and Emiliano Galicia Felix ("Plaintiffs") filed this case so that they and others similarly situated would have the opportunity to apply and be considered for lending opportunities with Defendant Discover Bank ("Discover") on the basis of their credit worthiness and not their citizenship or immigration status. This Settlement, of which Plaintiffs respectfully seek final approval, addresses the precise policy underlying Plaintiffs' claim of discrimination. Critically, Discover has agreed to review and, as necessary, change its lending policies for its student lending, personal lending and home loan lines of business to ensure that DACA applicants will be evaluated for credit eligibility on terms comparable to U.S. citizens, fully eliminating the harm challenged by the lawsuit, including Plaintiffs and class members who wish to reapply for Discover loans.

The Settlement also provides for monetary relief requiring Discover to pay $979,500 to create a Settlement Fund[2] to be awarded to individual class members and the class representatives, a separate payment by Discover to cover the cost of administering the settlement, and a separate payment for Class Counsel's attorneys' fees and costs to be determined by the Court. *See* ECF No. 126 (Plaintiffs' Motion for Attorneys' Fees and Costs); ECF No. 116-2 (Settlement Agreement) ("SA") §§ 3.3.1, 6.1, 15.1.4, 15.2.1. The Settlement, which the Court preliminarily approved on February 29, 2024, was reached after three and a half years of litigation and extensive negotiation, and has received a positive response from the Class. As of July 30, 2024, the Settlement Administrator, Epiq Global, Inc. ("Epiq"), has received 918 potentially valid Claim Forms from Settlement Class Members (281 Claim Forms from California Settlement Class Members and 637 Claim Forms from non-California Settlement Class Members). Epiq Decl. ¶ 38. Only one Class Member has opted out and none have submitted an objection. *Id.* ¶ 35.

---

[2]     Unless otherwise stated, all capitalized terms are used as defined in the Settlement Agreement. ECF No. 116-2 (Settlement Agreement).

## II.    RELEVANT BACKGROUND

As described in Plaintiffs' Motion for Preliminary Approval, ECF No. 116, and Plaintiffs' Motion for Attorneys' Fees and Costs, ECF No. 126, Class Counsel has dedicated hundreds of hours to this litigation and engaged in extensive arm's-length settlement negotiations, resulting in significant relief to the Class.[3]  *See* Declaration of Ossai Miazad in Support of Motion for Final Approval ("Miazad Decl.") ¶¶ 8-9.  The Settlement achieved by Class Counsel is procedurally sound: (a) having been reached after three and a half years of hard-fought, adversarial litigation, including extensive motion practice involving motions to compel arbitration, for reconsideration, to strike class claims, multiple amended complaints, a fully litigated appeal, and a discovery dispute; (b) with no parallel litigation that could give rise to reverse auction concerns; and (c) after three mediation sessions, overseen by highly experienced mediators with particular expertise in complex class actions, and followed by months of further negotiations between the parties.  *Id.* ¶¶ 5-10.

### A.    Settlement Negotiations and Preliminary Approval

In January 2021, after Discover removed the case from state to federal court and filed a motion to compel arbitration, the Parties agreed to stay the action and participated in the first two of three private mediation sessions.  Miazad Decl. ¶ 5.  The Parties were not able to resolve the matter during these sessions, which were overseen by the Honorable Carlos Moreno (Ret.).  *Id.* ¶ 6.  Following the unsuccessful mediation, the parties continued to litigate.  *Id.* ¶ 7.  After the Court granted Discover's motion to compel arbitration, Plaintiffs sought reconsideration on grounds that Plaintiff Perez had opted out of the arbitration agreement.  *Id.*  The Court granted Plaintiffs' motion for reconsideration and Discover appealed.  *Id.*  On Discover's motion, the Court granted a stay of the litigation pending the outcome of Discover's appeal.  *Id.*

During the stay pending appeal, the Parties undertook further settlement negotiations, attending an additional mediation session before mediator Hunter Hughes on June 21, 2023.  *Id.* ¶

---

[3]    A full discussion of the relevant factual and procedural background is set forth in Plaintiffs' Motion for Preliminary Approval, ECF No. 116, and Plaintiffs' Motion for Attorneys' Fees and Costs, ECF No. 126.

8.  The Parties continued negotiating following the mediation session and executed a settlement term sheet on July 18, 2023.  *Id.* ¶ 9.  The Court granted the Parties' request to stay the litigation pending settlement.  *Id.*  During the stay, the Parties finalized the settlement, and on January 12, 2024, the Parties executed the Settlement Agreement and moved for Preliminary Approval the same day.  ECF No. 116.

On February 23, 2024, the Court held a hearing on the Motion for Preliminary Approval, and preliminarily approved the settlement and certified the settlement class in an order dated February 29, 2024.  ECF Nos. 121, 123.

To effectuate the Settlement, Class Counsel reviewed bids from several settlement administrators before agreeing to Epiq as the Settlement Administrator.  *Id.* ¶ 10.  Class Counsel also drafted and filed the preliminary approval brief, and finalized the accompanying notice documents: notices (mail, email, and text), claim forms and instructions, reminder, and official documentation request.  ECF. Nos. 116, 116-2.

### B.    Settlement Overview

#### 1.    Programmatic Relief

Subject to its lending requirements, Discover agrees to review and, as appropriate, modify its lending criteria to make DACA recipients eligible for loans on terms comparable to U.S. citizens (the "Programmatic Relief").   SA § 3.2.1.  While it is difficult to quantify the benefit that the Programmatic Relief will convey to DACA recipients in the years to come, these changes will be extremely valuable. By removing additional lending requirements and eligibility bars, this policy shift eliminates the precise discriminatory harm that Plaintiffs sought to challenge and restores Plaintiffs and Class Members to equal footing with U.S. citizen applicants.  As a major provider of student, personal, and home loans, Plaintiffs hope and expect that Discover's decision to open its suite of consumer lending products to DACA recipients will have a positive impact on the consumer lending industry at large.

1

**2.    Monetary Relief**

2        Discover has also agreed to create a $979,500 Settlement Fund that will cover (1)

3   Verified Claims for each Class Members, SA § 3.3.1, and (2) Service Awards of $8,000 for each

4   of the Named Plaintiffs.  SA §§ 3.3.2; 15.2.  Settlement administration costs, which are

5   substantial, will not be paid out of the Settlement Fund; instead Discover will pay them

6   separately. The combined settlement value when including approximate settlement

7   administration cost is approximately $1,120,128.  Miazad Decl. ¶ 10.  Plaintiffs have moved

8   separately for attorneys' fees and costs, which are not to be paid out of the settlement fund.  ECF

9   No. 126.

10       The plan of allocation fairly and adequately compensates Class Members.  As of July 30,

11  2024, Epiq has received 1,015 Claim Forms from Settlement Class Members,[4] 918 of which

12  appear to be valid,[5] including 281 Claim Forms from California class members, and, based on

13  these preliminary numbers, California Class Members will receive approximately $2,772 each

14  while non-California Class Members will receive approximately $277.[6]  Epiq Decl. ¶ 39; *see* SA

15  § 3.3.3.  The Settlement Agreement provides that California Class Members are to receive a

16  share 10 times that of non-California Class Members, reflecting the relative strength of

17  entitlement to damages under the UCRA and § 1981.  *See* SA § 3.3.3.

18       **3.    The Settlement Class**

19       For settlement purposes only and consistent with the parties' Settlement Agreement,

20  Plaintiffs seek final certification of a Settlement Class, defined as: "All individuals who: (1)

21  according to Discover's records, applied for credit from Discover's student, personal or home

22

23  [4]    Epiq also received an additional 644 Claim Forms from individuals not on the Notice List.
    Epiq Decl. ¶ 37.  On July 26, 2024, Epiq sent a Denial Notice to the non-Settlement Class
24  Member claimants.  *Id.* at n. 3.

25  [5]    Epiq's initial review shows that 97 of the 1,015 Claim Forms contain deficiencies
    including that they are duplicates, late, missing a signature, or lack a complete W-9.
26
    [6]    Epiq has not yet completed its detailed review of the Claim Forms received and may still
27  receive additional Claim Forms postmarked by the July 11, 2024.  Epiq Decl. ¶ 39.  As a result,
    these numbers may change by the time of the Fairness Hearing.  *See id.*  Class Counsel will
28  provide updated numbers to the Court at the hearing.

1  loan lines of business between July 22, 2018, and the date of preliminary approval and were

2  either declined credit or received credit after meeting Discover's requirement to have a United

3  States citizen or lawful permanent United States resident co-signer; and (2) were recipients of

4  valid and unexpired DACA, resided in the United States and were not citizens of the United

5  States or lawful permanent United States residents at the time of the Discover loan application."

6  SA § 1.7.1.  The Court conditionally certified the class with this definition.  ECF No. 123 at 3-4.

7       **C.**    **Notice and Claims Process**

8       The parties have followed the Court-approved notice plan, as set forth in the Settlement

9  Agreement and the Court's Preliminary Approval Order.  SA § 7; ECF No. 123.  The notice plan

10  was thorough and constitutes the best notice practicable.  *See* Fed. R. Civ. P. 23(c)(2)(B).

11       Following preliminary approval, in between February 27, 2024 and March 14, 2024,

12  Discover sent Epiq the Notice List in four separate data files, which contained mailing addresses,

13  email addresses, and phone numbers for 149,173 unique individuals identified as potential Class

14  Members.  Epiq Decl. ¶ 22.  The Notice List is overinclusive in that it contains information for

15  all international applicants in the United States who were born on or after June 15, 1981 (per

16  DACA eligibility requirements) and rejected by Discover, including those who are not DACA

17  recipients, or who do not otherwise meet the Class definition.  Miazad Decl. ¶ 11.

18       Epiq provided notice to potential Settlement Class Members via three methods: email,

19  text message, and, where an email address and/or telephone number was not available, mail.

20  Epiq Decl. ¶¶ 23-30.  Epiq sent 150,436[7] email notices to class members, which were designed

21  using best practices to ensure delivery, as well as 139,507 text messages directing potential Class

22  Members to the Settlement Website.  *Id.* ¶¶ 23-26.  Epiq also sent long form notices by mail to

23  33,497 potential Class Members for whom no email and/or phone number was available or to

24  whom attempted email and/or text notice was returned undeliverable.  *Id.* ¶ 27.  Prior to mailing

25  notice, all addresses were verified through the National Change of Address database.  *Id.* ¶ 28.

26

27  ───────────────

28  [7]    Some Class Member records contained multiple email addresses and Epiq provided notice to each available email address.  Epiq Decl. ¶ 23.

Consistent with modern best practices, Epiq maintained a dual-language (English-Spanish) website providing the Notice, Claim Form, information about deadlines and other relevant dates, key pleadings and orders, and Class Counsel's contact information. *Id.* ¶ 32. As of July 30, 2024 there have been 13,047 unique visitors to the settlement website. *Id.* Epiq also created a dual-language (English-Spanish) toll-free phone number to field questions from Class Members, which had received 179 calls as of July 20, 2024. *Id.* ¶ 33.

Following email delivery, 22,791 email notices were returned as undeliverable. *Id.* ¶ 24. For each email returned as undeliverable, Epiq made two additional attempts to deliver the notice by email. *Id.* Following text message delivery, 33,349 text messages were deemed undeliverable. *Id.* ¶ 26.

Potential Class Members who Epiq was not able to reach by email and/or text were provided mail notice. *Id.* ¶ 27. Epiq sent 21,741 mail packets to individuals not reachable by electronic means and an additional 11,756 mail packets to individuals for whom no phone number or email was available.[8] *Id.* 3,453 mailed notices were returned as undeliverable and 2,318 were successfully remailed, leaving 1,135 mailed notices as completely undeliverable. *Id.* ¶ 29. In total, notice reached 99.8% of individuals on the Notice List. *Id.* ¶ 31.

Potential Class Members were able to submit the Claim Form by mail or through the settlement website. *Id.* ¶ 36. The deadline to postmark or submit a Claim Form was July 11, 2024. *Id.* ¶ 37. As of July 30, 2024, Epiq has received 1,659 Claim Forms. *Id.* Of those, 644 were submitted by individuals not on the Notice List. *Id.* Epiq sent a Denial Notice to those individuals on July 26, 2024 informing them they did not appear on the Notice List and granting an opportunity to provide documentation that they meet the class definition not later than August 1, 2024. *Id.* ¶ 37 n.3. As a result, Epiq may receive timely responses demonstrating these

---

[8]    If either email or text notice was successful to a potential Class Member, that individual did not receive a mailed notice. Mailed notice was only provided where neither form of electronic notice was successful, as well as where the only available contact information was a physical address.

1    individuals are class members after the deadline to file this motion, and Class Counsel will

2    update the Court as necessary at the Fairness Hearing.

3          The deadline for Class Members to object to or opt out of the Settlement was July 11,

4    2024.  *Id.* ¶ 35.  One Class Member opted out of the settlement.[9]  *Id.*  No Class Members

5    objected.  *Id.*

6          **D.    CAFA Notice Requirements Were Satisfied.**

7          In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, counsel

8    for Discover served CAFA notices on the relevant federal and state attorneys general on January

9    22, 2024.  Epiq Decl. ¶ 21; *see also* ECF No. 119.  The Fairness Hearing, set for August 30, 2024

10   is being held more than 90 days after the issuance of the CAFA notice, such that the final

11   approval order may be entered in accordance with CAFA's notice requirements if the Court finds

12   that all other requirements are met.  28 U.S.C. § 1715(d).

13   **III.    ARGUMENT**

14          **A.    The Best Practicable Notice of Settlement Has Been Provided to the Class.**

15          The notice here was the "best notice that is practicable under the circumstances," Fed. R.

16   Civ. P. 23(c)(2)(B), and was provided "in a reasonable manner to all class members who would

17   be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Notice is satisfactory "if it generally

18   describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

19   investigate and to come forward and be heard."  *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d

20   566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted).  Notice mailed to each

21   class member "who can be identified through reasonable effort" constitutes reasonable notice.

22   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  "'[T]he rule does not insist on actual

23   notice to all class members in all cases' and 'recognizes it might be *impossible* to identify some

24   class members for purposes of actual notice.'"  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121,

25   1129 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015)).

26

27   _____

28   [9]        Two other individuals submitted opt-out forms, but those opt-outs were denied because
     the individuals were determined to not be Class Members.

1   For any class certified under Rule 23(b)(3), the notice must inform class members "that the court

2   will exclude from the class any member who requests exclusion," stating "the time and manner

3   for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).

4          As described above, the mailing, emailing, and texting of Notices to Class Members and

5   the administration of the notice process ensured that the best notice practicable was provided to

6   Class Members.  Although the Notice List was overinclusive (because an applicant's DACA

7   status cannot be ascertained from Discover's records), courts widely recognize that notice mailed

8   to "a broader group than the class definition" meets the definition of the best notice practicable

9   under the circumstances "as long as there is some link or connection between the method of class

10  notice and the class definition." *Victorino v. FCA US LLC*, No. 16 Civ. 1617, 2020 U.S. Dist.

11  LEXIS 155991, at *5-6 (S.D. Cal. Aug. 27, 2020) (collecting cases).  Here, the Notice List

12  contained all international individuals whose application for a Discover credit product was

13  rejected and are eligible for DACA based on their date of birth.  *See* Miazad Decl. ¶ 11.  In

14  accordance with the Northern District's Procedural Guidance for Class Action Settlements, the

15  Notice was easily understandable, and included Class Counsel's contact information, the address

16  for the settlement administration website, and instructions on how to access the case docket.  *See*

17  Epiq Decl., Exs. 2-5.

18         The parties and the Settlement Administrator have complied with the Court-approved

19  notice plan, as set forth in the Settlement Agreement, and the Court's Preliminary Approval

20  Order.  SA § 7; ECF No. 116; ECF No. 123.  Because Class Members have been given a full and

21  fair opportunity to consider the terms of the proposed settlement and make an informed decision

22  on whether to participate, the Court should find that the notice was adequate and the best

23  practicable.  *See Ford v. CEC Entm't Inc.*, No. 14 Civ. 677, 2015 U.S. Dist. LEXIS 191966, at

24  *7-8 (S.D. Cal. Dec. 14, 2015) (finding notice standards satisfied when claims administrator

25  provided notice in accordance with the procedures previously approved by the court in its

26  preliminary approval order).

27       **B.      Final Certification of the Rule 23 Classes is Proper.**

28         At the preliminary approval stage, the Court conditionally certified the Settlement Class

1  under Rule 23(a) and 23(b)(3).  ECF No. 123 at 4.  The Court also conditionally appointed

2  Plaintiffs Perez, Felix, and Magaña as Class Representatives, and conditionally appointed

3  Plaintiffs' counsel, Outten & Golden LLP and MALDEF, as Class Counsel.  *Id.* at 4-5.

4      For the reasons outlined in Plaintiffs' Motion for Preliminary Approval, and the Court's

5  Preliminary Approval Order, the Class, Class Representatives and Class Counsel readily satisfy

6  Rule 23's requirements for settlement purposes.  ECF No. 116 at 10-13; ECF No. 123 at 4.  The

7  Court's preliminary certification decisions should now be confirmed as final.

8      **C.**    **Final Approval of the Class Action Settlement Should Be Granted Because**
        **the Settlement Is Fair, Adequate, and Reasonable and Appropriate under**

9          **Rule 23.**

10      The touchstone for the final approval inquiry is whether the settlement is "fair, adequate

11  and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual

12  component parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d

13  938, 952, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

14  1998) (internal quotation marks and alterations omitted)).  Pursuant to Rule 23(e)(2), a court

15  must consider whether "(A) the class representatives and class counsel have adequately

16  represented the class; (B) the proposal was negotiated at arms' length; (C) the relief provided for

17  the class is adequate . . . [and] (D) the proposal treats class members equitably to each other."  In

18  analyzing whether class relief is adequate, the court must consider the costs, risks, and delay of

19  trial and appeal; the method of processing class member claims and distributing relief; the terms

20  of any attorneys' fee awards; and any agreement made in connection with the settlement

21  proposal.  Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv); 23(e)(3).

22      This standard overlaps with the instruction of *Hanlon* to balance the following factors in

23  assessing a proposed class action settlement:

24      [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely
    duration of further litigation; [3] the risk of maintaining class action status throughout the

25      trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the
    stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a

26      governmental participant; and [8] the reaction of the class members to the proposed

27      settlement.

28  *Hanlon*, 150 F.3d at 1026; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir.

2009) (same). The inquiry required upon settlement is heightened where a case is settled prior to formal class certification.  *See Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019). Here, a rigorous review of the Settlement confirms that it merits final approval, as evidenced by a consideration of the factors set forth in *Hanlon*.

### 1.    Plaintiffs' Case Faced Significant Hurdles on Liability and Class Certification.

"Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'"  *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361, at *9 (N.D. Cal. Jan. 28, 2016) (quoting *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851) (N.D. Cal. 2010)).  Plaintiffs face substantial obstacles to full recovery.  First, liability is far from guaranteed.  This litigation—a lending discrimination class action on behalf of DACA recipients—presents a relatively novel theory with numerous unsettled issues.  Discover has vigorously contended that its policies are lawful and justified based on heightened risks inherent in lending to individuals with non-permanent immigration status. These issues have not been fully tested in litigation.  Discover may also highlight events in Plaintiffs' credit history to show that they were not qualified for the credit products they sought, regardless of their immigration status.

Plaintiffs further face obstacles to obtaining class certification.  The great majority of loan applicants, including Perez and Felix, were required to agree to arbitrate any claims related to the denial of their applications, and although Plaintiffs prevailed on their argument that they could elect to opt out of arbitration (so long as their loans were not otherwise approved after meeting Discover's requirement to have a U.S. citizen or permanent resident co-signer), few applicants had yet to exercise that opt out right. Discover may also argue that certain applicants would have been denied credit regardless of immigration status, and that Class Members' claims cannot be tried collectively due to individualized differences in their applications and credit histories, thereby preventing a finding of predominance.

### 2.    The Settlement Amount Is Appropriate.

"[P]erhaps the most important factor" courts consider in determining whether to grant

1    preliminary approval is "plaintiffs' expected recovery balanced against the value of the

2    settlement offer."  *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal

3    quotation marks omitted).  Here, the monetary and programmatic relief provide excellent value

4    for Class Members.  Similarly, the settlement provides the greatest degree of programmatic relief

5    possible.

6        California Class Members are anticipated to receive an individual award of approximately

7    $2,772, which amounts to approximately 69% of the $4,000 statutory damages available under

8    the Unruh Act for each discriminatory act.  Cal. Civil Code § 52(a).  This is an excellent result for

9    California Class Members.[10]  In light of the risks of an adverse judgment on the merits or class

10   certification, even awards lower than this amount would provide an excellent value.

11       National Class Members are anticipated to receive individual awards of approximately

12   $277, which constitutes a strong recovery considering the challenges inherent in establishing

13   Section 1981 liability class-wide and in certifying a class.  In particular, Class Members will face

14   significant challenges in establishing compensatory or nominal damages resulting from

15   Discover's denial of their loan applications. Given the risks on class certification and the merits,

16   even lower payments would constitute an excellent recovery for National Class Members.

17       Plaintiffs also obtained the *maximum* degree of programmatic relief that Class Members

18   could possibly obtain:  Discover will review, and as appropriate amend, its lending policies and

19   procedures for its student lending, personal lending and home loan lines of business to ensure

20   that DACA applicants will be evaluated for credit eligibility on terms comparable to U.S.

21   citizens.  All DACA recipients nationwide—not just Class Members—will benefit from this

22   relief, enabling hundreds of thousands of individuals to obtain credit under Discover's

23

24   _____

     [10]    *See, e.g.*, *Betancourt*, No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361, at *13-14 (N.D.

25   Cal. Jan 28, 2016) (granting final approval of settlement providing approximately 9.7% of total
     maximum potential recovery if class members had prevailed on all claims); *Stovall-Gusman v.

26   W.W. Granger, Inc.*, No. 13 Civ. 2540, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. June 17,
     2015) (finding that a settlement constituting 7.3% of plaintiff's estimated trial award to be "within

27   the range of reasonableness); *In re Heritage Bond Litig.*, No. 02 ML 1475, 2005 U.S. Dist. LEXIS
     13555, at *62 (C.D. Cal. June 10, 2005) (calling a recovery of 36% of the total net loss an

28   "exceptional result").

------

11

1    comparatively advantageous rates. Thus, the Programmatic Relief achieved here provides a

2    significant benefit to Class Members (and DACA recipients nationwide) and is as good or better

3    than what could have been obtained by protracted litigation and trial.

### 3.     The Extent of Discovery Supports Settlement.

5    A settlement requires adequate discovery.  The touchstone of the analysis is whether "the

6    parties have sufficient information to make an informed decision about settlement," including

7    formal and informal discovery.  *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d

8    454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th

9    Cir. 1998)).  Here, Plaintiffs have litigated these claims zealously for nearly four years – up to

10   and including litigating an appeal to the Ninth Circuit – conducting both formal and informal

11   discovery along the way. The Parties also explored the strengths and weaknesses of the claims

12   and defenses during their negotiations. Thus, the Settlement results from Class Counsel's

13   informed judgment.

### 4.     Counsel's Experience and Views Support Approval.

15   "'Great weight' is accorded to the recommendation of counsel, who are most closely

16   acquainted with the facts of the underlying litigation."  *See Nat'l Rural Telecomms. Coop. v.*

17   *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re PaineWebber Ltd. P'ships*

18   *Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). "[P]arties represented by competent counsel are

19   better positioned than courts to produce a settlement that fairly reflects each party's expected

20   outcome in litigation[.]"  *Rodriguez*, 563 F.3d at 967.

21   Here, Class Counsel are some of the most experienced class action litigators in the country

22   in this area. Miazad Decl. ¶ 3.  Class Counsel specialize in prosecuting complex employment and

23   civil rights class actions, and over many years have successfully—and unsuccessfully—litigated

24   many such cases, putting them in a strong position to weigh the strengths and weaknesses of

25   Plaintiffs' claims and Discover's defenses.  *Id*.  Based on their extensive experience, Class

26   Counsel believe that the Settlement is fair, reasonable, and adequate.  *Id.* ¶ 4.

### 5.     Class Members Have Reacted Positively to the Settlement.

28   Class Members in this case have reacted very positively to the Settlement.  While the

12

1    precise number of Class Members is unknown, Plaintiffs' applied assumptions lead to an

2    estimate of the Class as approximately 10% of the individuals on Notice List, or approximately

3    14,917 individuals.  Miazad Decl. ¶ 12.  As of July 30, 2024, Epiq has received 918 potentially

4    valid Claim Forms from Settlement Class Members,[11] a participation rate of approximately 6%.

5    Epiq Decl. ¶¶ 31, 37; *see In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 568 (9th Cir.

6    2019) (the Ninth Circuit has "approved class action settlements where less than five percent of

7    class members file claims" (internal quotation omitted)); *In re Zoom Video Communs., Inc.*

8    *Privacy Litig.*, No. 20 Civ. 2155, 2022 U.S. Dist. LEXIS 94857, at *28 (N.D. Cal. Apr. 21, 2022)

9    (approving settlement with a 1% claims rate and noting that a "non-reversionary" settlement

10   "mitigat[es] any risk" that a low "participation rate was intentionally engineered").

11        To date, one Class Member has opted out of the Settlement, and none have objected to

12   any part of the settlement, including the overall monetary relief achieved and Plaintiffs' service

13   awards.  *Id.* ¶ 35.  The lack of objections and single opt out is a strong positive reaction, favoring

14   a finding that the settlement is fair and should be finally approved.  *See DIRECTV, Inc.*, 221

15   F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed

16   class action settlement raises a strong presumption that the terms of a proposed class settlement

17   action are favorable to the class members."); *Munoz v. BCI Coca-Cola Bottling Co. of Los*

18   *Angeles*, 112 Cal. Rptr. 3d 324, 333-35 (Cal. Ct. App. 2010) (affirming final approval and

19   finding reaction to class favorable even where there were two opt-outs and one objection).

20            **6.    The Requirements for Approval under Rule 23(e)(2) Are Met.**

21        As noted above, Rule 23(e)(2) specifies several requirements for approval of a class

22   action settlement.  Each of these requirements is met here.  <u>First</u>, Class Representatives and Class

23   Counsel have adequately represented the Class.  Fed. R. Civ. P. 23(e)(2)(A).  As set forth in

24   greater detail in the Preliminary Approval and Fee Motions, this requirement has been met.  *See*

25   ECF No. 116 at 12; *see generally* ECF No. 126, 142.  Class Representatives have the same

26

27   ───────────────
     [11]        As noted in footnote 4, Epiq's detailed review of the Claim Forms is ongoing and it may

28   receive additional Claim Forms postmarked by the claims deadline or determine that others are
     invalid.

1    interests as other Class Members, and have devoted dozens of hours to advocating on the Class's

2    behalf.  *See* ECF No. 116 at 7-8; Miazad Decl. Ex. A-C (Named Plaintiff Declarations).  And, as

3    previously noted, Class Counsel are highly experienced and well-regarded in the field of class

4    action civil rights litigation.  *See* Miazad Decl. ¶ 3; ECF Nos. 126-1 (Herrera Decl. ISO Fees);

5    126-2 (Miazad Decl. ISO Fees); 142-1 (Supp. Miazad Decl. ISO Fees); 142-8 (Saenz Decl. ISO

6    Fees); *see also Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277, at *11

7    (S.D.N.Y. Sept. 20, 2016) (noting that Outten & Golden are "nationally recognized employment

8    class action litigators" in a Title VII disparate impact case); *Mills v. Capital One, N.A.*, No. 14

9    Civ. 1937, 2015 U.S. Dist. LEXIS 133530, at *32 (S.D.N.Y. Sept. 30, 2015) (noting Outten &

10   Golden's "excellent and well-deserved reputation").

11        <u>Second</u>, the Settlement was negotiated at arms' length.  Fed. R. Civ. P. 23(e)(2)(B).  A

12   settlement reached "in good faith after a well-informed arms-length negotiation" is presumed to

13   be fair.  *Fernandez v. Victoria Secret Stores, LLC*, No. 06 Civ. 4149, 2008 U.S. Dist. LEXIS

14   123546, at *15 (C.D. Cal. July 21, 2008).[12]  Here, the Settlement easily meets the rigorous

15   scrutiny required in this District and by *Roes*, for both substantive and procedural reasons.  *See*

16   944 F.3d at 1048-49.  First, the Settlement is substantively strong, providing excellent monetary

17   relief and robust programmatic relief.  Second, the Settlement is procedurally sound, (a) having

18   been reached after extensive, hard-fought adversarial litigation, with substantial discovery and

19   motion practice, (b) with no parallel litigation that could give rise to reverse auction concerns,

20   and (c) after multiple mediation sessions, overseen by two different highly experienced

21   mediators with particular expertise in complex class actions, and followed by months of further

22   negotiations between the parties. Miazad Decl. ¶¶ 4-10.  This is precisely the type of "an arms-

23   length, non-collusive, negotiated resolution" in which Ninth Circuit courts place "a good deal of

24   stock."  *Rodriguez*, 563 F.3d at 965; *see also Bert v. AK Steel Corp.*, No. 12 Civ. 467, 2008 U.S.

25

26   [12]      *See also Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action
     settlement where parties reached agreement after several months of negotiation and the record
27   contained no evidence of collusion); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal.
     2013) (private mediation "support[s] the conclusion that the settlement process was not
28   collusive").

Dist. LEXIS 111711, at *6-7 (S.D. Ohio Oct. 23, 2008) ("[P]articipation of an independent

mediator in settlement negotiations virtually ensures that the negotiations were conducted at

arm's length and without collusion between the parties").  Further, none of the *In re Bluetooth*

*Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) factors suggest collusion here, as

Plaintiffs seek attorneys' fees separate from the Settlement Amount, there is no "clear sailing"

provision in the agreement, and there is no reversion to the Defendant.  *See* Miazad Decl. ¶ 4.

     <u>Third</u>, as discussed in greater detail above, the relief provided by the Settlement is

adequate, particularly considering the relatively novel nature of Plaintiffs' claims.  Fed. R. Civ.

P. 23(e)(2)(C).  Settlement checks will be distributed to Class Members who submitted valid

Claim Forms within 30 days of the Effective Date once their claims are verified pursuant to the

procedures set forth in the Settlement Agreement, and Class Members will have 120 days from

the date of issuance to cash their checks.  SA §§ 5.2.5, 5.4.  Attorneys' fees, as awarded by the

Court, will be paid within 14 days after the Effective Date to the Settlement Administrator, to be

distributed to Class Counsel in accordance with the Settlement Agreement.  *Id*. § 15.1.4

     <u>Fourth</u>, the Settlement treats similarly situated Class Members the same.  All California

Class Members who submit Verified Claim Forms will receive awards in the amount of

approximately $2,772.  Epiq Decl. ¶ 39; *see also* SA § 3.3.3.  All National Class Members who

submit Verified Claim Forms will receive awards in the amount of approximately $277.  *Id.*  As

described above, the difference in award amounts for the Class Members from California and

nationally is justified by the difference in possible financial recovery for claims brought under

the Unruh Act and claims brought under Section 1981.

    **D.**    **The Requested Service Awards Are Reasonable In Light of Their Contributions and Risk.**

     Plaintiffs seek service awards of $8,000 each in recognition of the unusually high risks

they took in prosecuting this action and the work they put into representing the interests of the

Class.  "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class

action settlement.  *Staton*, 327 F.3d at 977.  Such payments are "intended to compensate class

representatives for work done on behalf of the class, to make up for financial or reputational risk

1    undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a

2    private attorney general." *Rodriguez*, 563 F.3d at 958-59; *see also In re Online DVD-Rental*

3    *Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (service awards "are intended to compensate

4    class representatives for work undertaken on behalf of a class [and] 'are fairly typical

5    in class action cases'" (quoting *Rodriguez*, 563 F.3d at 958)); *Staton*, 327 F.3d at 977 (courts

6    assessing service awards consider "the actions the plaintiff has taken to protect the interests of

7    the class, the degree to which the class has benefitted from those actions, . . . the amount of time

8    and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] . . .

9    retaliation." (internal quotations and citations omitted)).

10          Especially in civil rights matters like this one, service awards incentivize individuals to

11   bring important cases that have a broad impact benefiting a class of similarly situated

12   individuals. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named

13   plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is

14   necessary to induce an individual to participate in the suit.").  When evaluating the

15   reasonableness of a service award, courts may consider factors such as:

16          (1) the risk to the class representative in commencing a suit, both financial and
            otherwise; (2) the notoriety and personal difficulties encountered by the class
17          representative; (3) the amount of time and effort spent by the class representative;
            (4) the duration of the litigation; and (5) the personal benefit (or lack thereof)
18          enjoyed by the class representative as a result of the litigation.

19   *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

20   Here, these factors weigh strongly in approving Plaintiffs' requested service awards.  *See id.*

21   (granting $50,000 service award where "several of the above factors support[ed] [the] request for

22   an incentive award").  Here, the requested service awards are reasonable based on each of the

23   factors.

24          First, Plaintiffs took on great reputational risk by exposing themselves as DACA

25   recipients and taking a leadership role in a class action lawsuit that has garnered media

26   coverage,[13] satisfying factors (1) and (2).  *See id.*  Plaintiffs each have DACA and have had

27

28   _____
     [13]    *See, e.g.*, Bob Egelko, *Discover Bank to Pay Nearly $1M Over Claims It Denied Loans to
     DACA Recipients*, San Francisco Chronicle, March 11, 2024,

difficulty accessing products and services because of that status (including from Discover, necessitating this lawsuit).  Bringing this lawsuit, required them to publicly disclose this fact. Perez Decl. ¶¶ 2, 10; Magaña Decl. ¶¶ 2, 9; Felix Decl. ¶¶  2, 9;  *see Reed v. Balfour Beatty Rail, Inc.,* No. 21 Civ. 1846, 2023 U.S. Dist. LEXIS 128546, at *24 (C.D. Cal. June 22, 2023) (approving $10,000 service award on account of the "distinct reputational risks" the named plaintiff endured in bringing the action); *Sebastian v. Sprint/United Mgmt. Co.*, 2019 U.S. Dist. LEXIS 225167, at *26 (C.D. Cal. Dec. 5, 2019) (granting a $10,000 service award, where the court did "not find Plaintiff's efforts . . . especially onerous," but "[it] recognize[d] and [took] into account Plaintiff's reputational concerns"); *Covillo v. Specialty's Café*, No. 11 Civ. 594, 2014 U.S. Dist. LEXIS 29837, at *29 (N.D. Cal. Mar. 6, 2014) (awarding $8,000 service award where the "Plaintiffs undertook a significant 'reputational risk' in bringing th[e] action"); *Taha v. Bucks Cty. Pa.,* No. 12 Civ. 6867, 2020 U.S. Dist. LEXIS 222655, at *28 (E.D. Pa. Nov. 30, 2020) (granting a $30,000 service award, partly because Plaintiff's "criminal history will be forever public due to this litigation").

Second, Plaintiffs spent significant time prosecuting this case over the past three and one-half years, satisfying factors (3) and (4).  Plaintiff Perez estimates she spent approximately 31 hours on the case, Perez Decl. ¶ 8; Plaintiff Magaña estimates he spent approximately 35 hours, Magaña Decl. ¶ 7; and Plaintiff Felix estimates he spent approximately 20 hours.  Felix Decl. ¶ 7.

Finally, with respect to factor (5), Plaintiffs obtained no benefit from the settlement beyond what other class members are entitled to, making a service award appropriate.  *See Van Vracken*, 901 F. Supp. at 299 (granting request for a service award where the plaintiff's "claim makes up only a tiny fraction of the common fund").

## IV.    CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' Preliminary Approval Motion and Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards, Plaintiffs respectfully request that the Court grant Final Approval of the Settlement, grant final

---

https://www.sfchronicle.com/politics/article/discover-bank-daca-18891661.php

1 | certification of the Class, designate Plaintiffs Perez, Felix, and Magaña as Class Representatives,

2 | and confirm Outten & Golden LLP and MALDEF as Class Counsel.

3 | Dated: July 31, 2024

Respectfully submitted,

By: /s/ Ossai Miazad
        Ossai Miazad

Ossai Miazad (*pro hac vice*)
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, D.C. 20005
Telephone: (202) 914-5097
Facsimile: (202) 847-4410
om@outtengolden.com

Chauniqua D. Young *(pro hac vice)*
Rebecca L. Pattiz *(pro hac vice)*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:   (212) 245-1000
Facsimile:   (646) 509-2060
Email:  cyoung@outtengolden.com
Email:  rpattiz@outtengolden.com

Adam Koshkin (SBN 320152)
**OUTTEN & GOLDEN LLP**
One California, 12th Floor,
San Francisco, CA 94111
Telephone: (415) 322-1391
Facsimile: (415) 638-8810
Email: akoshkin@outtengolden.com

Thomas A. Saenz (SBN 159430)
Ernest I. Herrera (SBN 335032)
**MEXICAN AMERICAN LEGAL**
**DEFENSE AND EDUCATIONAL FUND**
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone:   (213) 629-2512
Facsimile:   (213) 629-0266
Email:  tsaenz@maldef.org
Email:  eherrera@maldef.org

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Plaintiffs and the Class*

19